**RAINES FELDMAN LLP**
JOHN S. CHA (SBN 129115)
jcha@raineslaw.com
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 440-4100
Facsimile: (424) 239-1613

Attorneys for Plaintiffs
TC Rich, LLC, Rifle Freight, Inc., Fleischer Customs Brokers, Richard G. Fleischer, and Jacqueline Fleischer

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC RICH, LLC, a California Limited Liability Company, RIFLE FREIGHT, INC., a California corporation, FLEISCHER CUSTOMS BROKERS, a sole proprietorship, RICHARD G. FLEISCHER, an individual, and JACQUELINE FLEISCHER, an individual,<br><br>          Plaintiffs,<br><br>     v.<br><br>PACIFICA CHEMICAL, INCORPORATED, a California Corporation, AQUA SCIENCE ENGINEERS, INC., a California Corporation, A/E WEST CONSULTANTS, INC., a Nevada Corporation, and DOES 1 through 10, inclusive,<br><br>          Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS | Case No. CV 15-4878 DMG (AGRx)<br><br>*Assigned to the Hon. Dolly M. Gee*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) MODIFICATION OF SCHEDULING ORDER AND (2) LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 19, 2019<br>Time: 9:30 a.m.<br>Courtroom: 8C<br><br>Action filed:  June 26, 2015<br>Discovery cut-off:  None set<br>Trial date:  None set |

*TC RICH v. Pacifica Chemical, et al.*
USDC Case No. CV 15-4878 DMG (AGRx)

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR (1) MODIFICATION OF
SCHEDULING ORDER AND (2) LEAVE TO
FILE FIRST AMENDED COMPLAINT

## I.     INTRODUCTION

Plaintiffs TC RICH, LLC, Rifle Freight, Inc., Fleischer Customs Brokers, Richard G. Fleischer, and Jacqueline Fleischer ("TC Rich," or "Plaintiffs"), current owner of the property located at 132 West 132nd Street, Los Angeles (the "Property"), file this Motion for Modification of the Scheduling Order and Leave to File a First Amended Complaint ("Motion") due to a recent failure of  Defendant Pacifica Chemical Inc. ("Pacifica Chemical") to cooperate with the California Department of Toxic Substances Control ("DTSC") by entering into the agency's requested Facility Initiated Corrective Action agreement ("FICA") and continue progress in its remediation efforts to address chemical contamination at the Property.  This contamination, including significant subsurface concentrations of volatile organic compounds, including tetrachloroethene (also known as perchloroethylene or "PCE"), was caused by Pacifica Chemical's occupation of the Property for nearly two decades, where it operated a chemical manufacturing and distribution business that acquired and utilized hazardous materials, including chemical solvents.

Plaintiffs filed this action in the United States District Court for the Central District of California (Case No. 2:15-cv-4878) on June 26, 2015. Dkt. 1.  The complaint alleged, *inter alia*, that Pacifica Chemical was an owner and/or operator of the Property at a time when hazardous substances were disposed at the Property. Dkt. 1, ¶¶ 9, 29-34, 35-40.  Based on Pacifica Chemical's prior operations at the Property, TC Rich alleged that Pacifica Chemical was a potentially responsible party ("PRP") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq*., and therefore liable for response costs relating to the remediation of groundwater contamination discovered in 2015.  A scheduling conference was held on January 4, 2016, at which the court

*TC RICH v. Pacifica Chemical, et al.*
USDC Case No. CV 15-4878 DMG (AGRx)

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) MODIFICATION OF SCHEDULING ORDER AND (2) LEAVE TO FILE FIRST AMENDED COMPLAINT**

set an initial deadline of March 11, 2016, for amending pleadings or adding parties. Dkt. 43.

On January 6, 2017, the case was transferred to the Honorable Dolly M. Gee. The Court's minutes associated with the transfer state: "[a]ll previously scheduled dates and deadlines are VACATED." Dkt. 71.  On January 6, 2017, the Court issued a new scheduling and case management order, but listed "N/A" as the new deadline for amendment of pleadings, indicating that the date had expired under the original scheduling order. Dkt. 72-1.

Due to the parties' collective belief that there was a "great likelihood" the parties would be able to "fully and finally resolve all of the outstanding litigation between them," the parties entered into a stipulation to stay the litigation on June 30, 2017. Dkt. 89. The Court granted the stay on July 3, 2017, vacating all the dates and deadlines set forth in its most recent scheduling order. Dkt. 90. The matter has been stayed since that time, until the Court recently lifted the stay for the limited purpose of allowing Plaintiffs to file the instant motion. Dkt. 104.

Although Plaintiffs initially intended to seek leave to amend the complaint to also name two new defendants in this action, (Dkt. 103), in light of the procedural posture of this case and the length of time for which it has been pending, Plaintiffs have instead decided to request a much more limited amendment of the complaint to add only a Resource Conservation Recovery Act ("RCRA") claim against the existing defendant, Pacifica Chemical.

This amendment to add Plaintiffs' RCRA claim can be found at[1] new paragraphs 2 (p. 1:18-20), 4 (p. 1:28 – 2:1), 99-110 (p. 24:8-25:26), and in Plaintiffs' prayer for relief at pages 26:23-26, 27:5-17.  Plaintiffs have also made minor revisions to correct errors in factual allegations.  These amendments modify

---

[1] All citations to proposed amendments to Plaintiffs' complaint refer to the redlined version of the pleading filed herewith (Appendix 1).

*TC RICH v. Pacifica Chemical, et al.*
USDC Case No. CV 15-4878 DMG (AGRx)

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) MODIFICATION OF SCHEDULING ORDER AND (2) LEAVE TO FILE FIRST AMENDED COMPLAINT

1 paragraphs 8 (p. 3:2), 9 (p. 3:12), 14 (p. 4:23 -27), 15 (p. 5:1-2), 29 (p. 10:16), and

2 31 (p. 10:22).  Pursuant to Paragraph 5(b) of the Initial Standing Order, Plaintiffs

3 have lodged the amended pleading with this Motion and attached a redlined version

4 of the amended pleading—indicating all amendments described above—as

5 Appendix 1.

6       Given the joint nature of liability under CERCLA, Plaintiffs are

7 simultaneously filing a separate new action against the additional responsible parties

8 along with an appropriate Notice of Related Cases. This is procedurally simpler and

9 more proper, and conserves judicial resources in that this Court will not be required

10 to hear and decide unnecessary issues in the present action.

11 **II.    SITE REMEDIATION HISTORY**

12       In October 2015, after Plaintiffs' discovery of the contamination at the

13 Property—which was missed in the Phase I and Phase II environmental

14 investigations performed by A/E West Consultants, Inc. ("A/E West"), and Aqua

15 Science Engineers, Inc. ("Aqua Science"),[2] in connection with Plaintiffs' purchase

16 of the Property in 2005—Plaintiffs and Pacifica Chemical entered into an agreement

17 for Pacifica Chemical to perform and participate in investigation of the Property and

18 the development of a remediation plan to address soil vapor and groundwater

19 contamination at and migrating from the Property. Declaration of John S. Cha ("Cha

20 Decl.") at ¶ 3.  Subsequently, Pacifica Chemical engaged Murex Engineering

21 ("Murex") to perform additional analysis on the Property, and Murex submitted a

22 report to the DTSC in January 2016 regarding its analysis of samples collected in

23 November and December 2015 and proposing the installation of monitoring wells at

24 the Property. *Id.* at ¶ 4, Ex. 1.  Murex submitted a Facility Investigation Report to

25 the DTSC on February 15, 2016 (revised May 20, 2016), which reported that the

26

27 [2] A/E West and Aqua Science reached settlement with Plaintiffs at the settlement conference in June 2016, and have been dismissed from the action.

28 TC RICH v. Pacifica Chemical, et al.        3        MEMORANDUM OF POINTS AND
USDC Case No. CV 15-4878 DMG (AGRx)        AUTHORITIES IN SUPPORT OF PLAINTIFFS'
                                           MOTION FOR (1) MODIFICATION OF
                                           SCHEDULING ORDER AND (2) LEAVE TO
                                           FILE FIRST AMENDED COMPLAINT

1  installation of monitoring wells had begun. *Id.* at ¶ 5, Ex. 2.  This report concluded

2  that there was PCE contamination consistent with a release or releases from the

3  Property, including a release from the closed storage tank previously used by

4  Pacifica Chemical. *Id.*

5    When this matter was transferred to this Court's docket, and throughout the

6  pendency of this case, Plaintiffs and Pacifica Chemical have engaged in settlement

7  discussions and have been working with DTSC on plans for additional testing by

8  Pacifica Chemical and the development of a remediation plan to address the soil

9  vapor and groundwater contamination at and migrating from the Property. *Id.* at ¶ 6.

10  As such, until recently, there did not appear to be a need for Plaintiffs to seek

11  injunctive relief under the Resource Conservation and Recovery Act ("RCRA")

12  against Pacifica Chemical in order to achieve site cleanup; Pacifica Chemical was

13  voluntarily performing. *Id.*

14    That all changed when, in the summer of 2018, Pacifica Chemical refused to

15  enter into a FICA with DTSC, and DTSC in turn refused to allow further site

16  investigation work to go forward. Cha Decl. at ¶ 7.  DTSC considers Pacifica

17  Chemical the responsible party for the contamination and, on May 4, 2018, sent

18  Pacifica Chemical a FICA that named only Pacifica Chemical as the responsible

19  party. Dkt. 98.  Pacifica Chemical has refused to enter into any such agreement with

20  DTSC that does not also include Plaintiffs. *Id.*  DTSC will not move forward in its

21  oversight or approval of further site investigation until Pacifica Chemical enters into

22  a FICA with the agency. Cha Decl. at ¶ 8; Dkt. 96.  No administrative order has

23  been issued by DTSC relating to site conditions, nor has DTSC required Plaintiffs to

24  sign the FICA to proceed with the cleanup of the Property. *Id.* at ¶ 9.

25    Up until the time that Pacifica Chemical refused to sign the FICA with DTSC,

26  Pacifica Chemical had given Plaintiffs every reason to believe that it would actively

27

28

1   cooperate with DTSC to remediate the Property. *Id.* at ¶ 10.

2   **III.   OVERVIEW OF RELIEF SOUGHT**

3        Plaintiffs seek modification of the scheduling order and leave to file a first

4   amended complaint, pursuant to Federal Rule of Civil Procedure ("FRCP") 16(b),

5   for the limited purpose of adding a RCRA claim against Pacifica Chemical seeking

6   injunctive relief to require cleanup of the Property and recovery of Plaintiffs'

7   attorneys' fees.  Plaintiffs appreciate that the deadline to amend pleadings in this

8   case has passed, but seek the relief requested based upon their reasonably-held

9   belief that injunctive relief was not a necessary claim earlier in this action as

10  Pacifica Chemical was actively cooperating with DTSC to perform site cleanup.

11  Until the recent impasse with DTSC regarding the FICA, Pacifica Chemical

12  indicated that it was working cooperatively with DTSC to investigate and remediate

13  the Property. Cha Decl. at ¶ 11.  Had Pacifica Chemical continued on this trajectory,

14  an amendment to include a RCRA claim—which authorizes the Court to issue an

15  injunction requiring that Pacifica Chemical remediate the contamination (42 U.S.C.

16  § 6972(a)(2))—would have been unnecessary.

17  **IV.   ARGUMENT**

18       FRCP 15(a) provides that leave to amend a pleading should be "freely given

19  when justice so requires."  The Ninth Circuit has stated that this policy favoring

20  amendment should be applied with "extreme liberality." *Morongo Band of Mission*

21  *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

22       However, when the time for amending a pleading set forth in a court's

23  scheduling order has passed, a party wishing to amend its pleading must show "good

24  cause" for modifying the scheduling order to allow for the amendment. FRCP 16(b).

25  The good cause inquiry focuses on the reasonable diligence of the moving party. *See*

26  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)

27

28

(affirming district court's denial of plaintiff's motion to amend his complaint after time for amendment set forth in scheduling order had elapsed, because plaintiff ignored numerous clear signals from the defendant before the amendment cut-off— including defendant's answer, an interrogatory response, and a letter—indicating that an amendment to correct plaintiff's complaint was necessary).

Rule 16(b) provides in part:

> (b) [The district court] . . . shall, after consulting with the attorneys for the parties and any unrepresented parties, by a scheduling conference, . . . enter a scheduling order that limits the time
>
> (1) to join other parties and to amend the pleadings;
>
> (2) to file and hear motions; and
>
> (3) to complete discovery
>
> . . .
>
> A schedule shall not be modified except by leave of . . . [the district court] upon a showing of good cause.

In *Johnson*, the Ninth Circuit found that the plaintiff could not meet the good cause standard for modifying the scheduling order because he had failed to "heed clear and repeated signals that not all the necessary parties had been named in the complaint," and that such a failure "does not constitute diligence." *Johnson*, 975 F.2d at 609. "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.*; *see also Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.*), 715 F.3d 716, 737 (9th Cir. 2013) ("While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end.'") (quoting *Johnson*, 975 F.2d at

*TC RICH v. Pacifica Chemical, et al.*
USDC Case No. CV 15-4878 DMG (AGRx)

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) MODIFICATION OF SCHEDULING ORDER AND (2) LEAVE TO FILE FIRST AMENDED COMPLAINT**

609).

Here, Plaintiffs did not fail to "heed clear and repeated signals" that amending the complaint to include a RCRA claim was necessary. Rather, Plaintiffs diligently and cooperatively participated with Pacifica Chemical and DTSC to address the site contamination, with Pacifica Chemical taking the lead in the remediation efforts and giving no clear indication that it would suddenly withdraw its cooperation in the summer of 2018. Cha Decl. ¶ 11; Dkt. 98.

Under the circumstances of Pacifica Chemical's cooperation with DTSC, Plaintiffs' decision not to seek leave to amend the complaint before March 11, 2016, was reasonable, as Plaintiffs expected that the remedy would be performed by Pacifica Chemical under DTSC's oversight. Plaintiffs' proposed amendment to add a RCRA claim has been necessitated by Pacifica Chemical's ultimate deviation from that trajectory—not Plaintiffs' lack of diligence. Now that Pacifica Chemical is no longer cooperating and has reached an impasse with DTSC, a RCRA claim is necessary to facilitate the cleanup of the Property in the event that DTSC does not issue an order requiring that Pacifica Chemical—which DTSC considers the responsible party—undertake the requisite investigation and remediation.

Moreover, the proposed amendment does not prejudice Pacifica Chemical. *See Learjet, Inc.*, 715 F.3d at 737 (noting that a court may also take into account prejudice to the opposing party when evaluating a motion under Rule 16(b)). Pacifica Chemical has already been working with DTSC with respect to addressing the contamination at the Property, and Pacifica Chemical is fully aware that DTSC considers it to be the responsible party at the Property, and thus the party who will ultimately need to perform the remedy. Further, the addition of a RCRA claim against Pacifica Chemical is premised on the same underlying legal liability as the other claims included in the original complaint and requires no additional discovery

*TC RICH v. Pacifica Chemical, et al.*
USDC Case No. CV 15-4878 DMG (AGRx)

7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) MODIFICATION OF SCHEDULING ORDER AND (2) LEAVE TO FILE FIRST AMENDED COMPLAINT**

1   that would not otherwise be necessitated by the existing claims.  Finally, a RCRA

2   claim will not require a change to the remainder of the schedule or result in delay.

3   **V.     CONCLUSION**

4           Pursuant to FRCP 16(b), Plaintiffs respectfully request that the Court (1) find

5   that Plaintiffs have shown good cause for modification of the Scheduling Order to

6   allow for amendment of the operative complaint; and (2) grant Plaintiffs leave to file

7   a First Amended Complaint that includes a RCRA cause of action against Pacifica

8   Chemical.

9

10  Dated: March 21, 2019            **RAINES FELDMAN LLP**

11

12                         By:   _____

13                                JOHN S. CHA
                                  Attorneys for Plaintiffs TC Rich, LLC, Rifle
14                                Freight Inc., Fleischer Custom Brokers,
                                  Richard G. Fleischer, and Jacqueline Fleischer
15

16

17

18

19

20

21

22

23

24

25

26

27

28

*TC RICH v. Pacifica Chemical, et al.*
USDC Case No. CV 15-4878 DMG (AGRx)                8

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR (1) MODIFICATION OF
SCHEDULING ORDER AND (2) LEAVE TO
FILE FIRST AMENDED COMPLAINT**

# APPENDIX 1

1 | RAINES FELDMAN LLP
2 | JOHN S. CHA, ESQ. (SBN 129115)
  | jcha@raineslaw.com
3 | ~~STEVEN T. GEBELIN (SBN 261507)~~
4 | ~~sgebelin@raineslaw.com~~ 1800 Avenue of the Stars, 12th Floor
  | Los Angeles, California 90067
5 | Telephone: (310) 440-4100
6 | Facsimile: (424) 239-1613
  | ~~9720 Wilshire Boulevard, 5th Floor~~
7 | ~~Beverly Hills, California 90212~~
  | ~~Telephone:  (310) 440-4100~~
8 | ~~Facsimile:    (424) 239-1613~~
9 |
10 | Attorneys for Plaintiffs
   | TC RICH, LLC, Rifle Freight, Inc., Fleischer
11 | Customs Brokers, Richard G. Fleischer, and
   | Jacqueline Fleischer
12 |
13 |
14 | **UNITED STATES DISTRICT COURT**
15 | **CENTRAL DISTRICT OF CALIFORNIA**
16 |

| | |
|---|---|
| 17 | TC RICH, LLC, a California Limited Liability Company, RIFLE FREIGHT, INC., a California corporation, FLEISCHER CUSTOMS BROKERS, a sole proprietorship, RICHARD G. FLEISCHER, an individual, and JACQUELINE FLEISCHER, an individual, | Case No. CV 15-4878 DMG (AGRx) *Assigned to the Hon. Dolly M. Gee* ~~Case No.~~ **FIRST AMENDED** COMPLAINT FOR: |

17 | TC RICH, LLC, a California Limited Liability Company, RIFLE FREIGHT, INC., a California corporation, FLEISCHER CUSTOMS BROKERS, a sole proprietorship, RICHARD G. FLEISCHER, an individual, and JACQUELINE FLEISCHER, an individual,

Case No. CV 15-4878 DMG (AGRx)

*Assigned to the Hon. Dolly M. Gee* ~~Case No.~~

**FIRST AMENDED** COMPLAINT FOR:

21 |             Plaintiffs,

22 |       v.

23 | PACIFICA CHEMICAL INCORPORATED, a California Corporation, AQUA SCIENCE ENGINEERS, INC., a California Corporation, A/E WEST CONSULTANTS, INC., a Nevada Corporation, and DOES 1 through 10, inclusive,

28 |             Defendants.

1. **COST RECOVERY- OWNER LIABILITY;**
2. **COST RECOVERY- OPERATOR LIABILTY;**
3. **COST RECOVERY- ARRANGER LIABILITY;**
4. **DECLARATORY RELIEF;**
5. **CONTINUING PRIVATE NUISANCE;**
6. **CONTINUING TRESPASS;**
7. **NEGLIGENCE;**
8. **NEGLIGENCE PER SE; and**
9. **PROFESSIONAL NEGLIGENCE**
10. **INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

---

*TC RICH v. Pacifica Chemical, et al.* | **FIRST AMENDED** COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Plaintiffs allege as follows:

2  <u>**INTRODUCTION**</u>

3  1.    This action arises out of hazardous substance contamination at and

4  released from the real property commonly known as 132 West 132nd Street, Los

5  Angeles, California (the "Property.")  Plaintiff TC RICH, LLC, is the record owner

6  of the Property and recently discovered chemical contamination at its Property,

7  including significant subsurface concentrations of volatile organic compounds

8  including tetrachloroethene (a.k.a. perchloroethylene or "PCE") a known toxic and

9  carcinogenic compound commonly used as a cleaning solvent.  In addition to

10  appearing in soil, soil vapor, and groundwater samples taken from the Property,

11  airborne PCE has been detected within the structure on the Property at levels in

12  excess of California Human Health Screening Levels ("CHHSLs") for indoor air

13  concentrations for commercial/industrial sites.

14  2.    Plaintiffs bring this action under the Comprehensive Environmental

15  Response, Compensation, and Liability Act of 1980, 42 U.S.C.A. §§ 9601 *et seq.*

16  ("CERCLA") to recover the costs of response to the contamination that have now

17  been and will continue to be incurred in responding to the contamination at the

18  Property, and under the Resource Conservation and Recovery Act 42 U.S.C. § 6901

19  *et seq.* ("RCRA") for injunctive relief and attorney's fees.  Plaintiffs seek recovery

20  of these costs and other relief from the prior owners, operators, and polluters that

21  caused the ongoing contamination and release of hazardous substances at the

22  Property.

23  3.    Plaintiffs qualify as "innocent landowners" under CERCLA, having not

24  performed any acts to contribute to the contamination at the Property and not having

25  knowledge of the contamination at the time of the purchase of the Property despite

26  having performed all reasonable inquiry.

27  <u>**JURISDICTION AND VENUE**</u>

28  4.    This Court has original jurisdiction pursuant to 42 U.S.C. § 9607(a), 42

*TC RICH v. Pacifica Chemical, et al.*          1          FIRST AMENDED COMPLAINT~~COMPLAINT~~

Formatted: No widow/orphan control

1  U.S.C. § 6972(a), and 28 U.S.C. § 1331, and supplemental jurisdiction over the state

2  law claims pursuant to 28 U.S.C. § 1367.

3      5.    Venue is proper in the Western Division of the Central District of

4  California pursuant to 42 U.S.C. § 9607(a) and 28 U.S.C. § 1391(b) because the

5  events giving rise to this action, including the releases or threatened releases of

6  hazardous substances, occurred and are occurring at the Property, which is real

7  property located in this District, and Defendants reside within the District.

8                                    **PARTIES**

9      6.    Plaintiff TC RICH, LLC ("TC RICH"), is a California limited liability

10  company and is the legal/record owner of the Property.  TC RICH is a single

11  purpose entity created to purchase the Property.  Its members are Richard Fleischer

12  and Jacqueline Fleischer.   TC RICH purchased the Property by way of conveyance

13  from Eun Hee Lee in 2005.

14      7.    Plaintiff FLEISCHER CUSTOMS BROKERS is a sole proprietorship

15  of Richard G. Fleischer and conducts business on the Property and pays rent to TC

16  RICH.  Plaintiff RIFLE FREIGHT, INC., is a California corporation, and conducts

17  business at the Property and pays rent to TC RICH.  Its shareholders are Richard

18  Fleischer and Jacqueline Fleischer.  RICHARD and JACQUELINE FLEISCHER

19  are individual citizens of California, with their residence in Los Angeles County,

20  California.

21      8.    Plaintiffs TC RICH, FLEISCHER CUSTOMS BROKERS, RIFLE

22  FREIGHT, INC., RICHARD FLEISCHER, and JACQUELINE FLEISCHER

23  (collectively "Plaintiffs") bring this action as a Potentially Responsible Party (herein

24  "PRP") pursuant to the authority of Section 107(a)(4)(B) of CERCLA [42 U.S.C. §§

25  9607(a)(4)(B)] but further allege that they are each "innocent landowners" such that

26  they are not connected to any of the prior owners, operators, and/or polluters of the

27  Property by a "contractual relationship" within the meaning of 101(35) of CERCLA,

28  42 U.S.C. §§ 9607(b)(3)and 9601(35) in that Plaintiffs did not participate in any

*TC RICH v. Pacifica Chemical, et al.*        2        FIRST AMENDED COMPLAINT~~COMPLAINT~~

1  way in the disposal of toxic or hazardous substances on the Property, acquired the

2  Property after the disposal of hazardous substances, and did not know nor ha~~ved~~ any

3  reason to know at the time of the acquisition of the Property that any hazardous

4  substances were disposed there, despite conducting all appropriate inquiries, as

5  described below, into the previous ownership and uses of the facility consistent with

6  good commercial or customary standards and practices prior to their acquisition of

7  the Property.

8    9.    Defendant PACIFICA CHEMICAL, INCORPORATED ("Pacifica

9  Chemical"), is named herein as a PRP pursuant to Section 107(a)(2), 107(a)(3) and

10  107(a)(4) CERCLA, 42 U.S.C. §§ 9607(a)(2), (a)(3) and (a)(4) in that said

11  defendant was the owner of and/or disposer of hazardous substances on the Property

12  from approximately 1983~~1978~~ ~~through approximately~~ to 2000,~~1999~~ during which

13  time said defendant actively transported to and disposed of hazardous substances on

14  the Property as more fully described herein.  Plaintiffs are informed and believe that

15  Pacifica Chemical subsequently moved its operations and is now located at 935 E.

16  Artesia Boulevard, Carson, California 90746.

17    10.    Defendants Doe 1 through 10, inclusive, respectively, are persons,

18  partnerships, corporations or entities, who are, or were, responsible for, or in some

19  way contributed to, contamination found at the Property, which is the subject of this

20  complaint (the "Contamination"), or are, or were, responsible for the maintenance,

21  supervision, management, operations, or insurance coverage of the Defendants'

22  facilities or operations on the Property as identified herein, or in some other manner,

23  are responsible for the occurrences herein alleged and proximately caused damages

24  to Plaintiffs.

25    11.    On information and belief, at all times herein mentioned, each of

26  Pacifica Chemical and the Doe defendants named herein was the agent, employee,

27  partner, or joint venturer of the others and was at all times herein mentioned acting

28  within the purpose and scope of such agency, employment, partnership or joint

1  venture.

2       12.    Defendant AQUA SCIENCE, INC. ("Aqua Science"), a California

3  Corporation, conduct business at 17895 Sky park Circle, Suite E, Irvine, California

4  as consulting engineers and geologists licensed by the State of California and as

5  such were retained by Plaintiffs herein to conduct a subsurface soil investigation of

6  the Property that is the subject of this action.

7       13.    Defendant A/E WEST CONSULTANTS, INC. ("A/E West"), a

8  Nevada Corporation, conducted business at 8 Corporate Park, Suite 300, Irvine,

9  California 92606 during the relevant time period as environmental assessment

10 professionals registered with the State of California and as such were retained for

11 the benefit of Plaintiffs to conduct an Environmental Site Assessment, commonly

12 known as a Phase I ESA, of the Property that is the subject of this action.

13                      **FACTUAL BACKGROUND**

14 **The Property and Pacifica Chemical's Operations.**

15      14.    The Property is comprised of parcels of real property located in an

16 unincorporated portion of the County of Los Angeles, State of California,

17 commonly known as 132 W. 132nd Street, Los Angeles, California, bearing Los

18 Angeles County Assessor Parcel Numbers 05-300-19 and 05-300-20 and consisting

19 of approximately 1.62 acres in total size and an improvement of a two-story

20 industrial structure, which is approximately 36,750 square feet in size.  The structure

21 was developed in 1978 to be occupied by Pacifica Chemical for chemical

22 manufacturing and distribution.  Pacifica Chemical (including operations under

23 various trade and corporate names) used the Property for these purposes from

24 approximately 1983 to until at least 1999mid-2000.  The Property was then used

25 variously as a garment storage warehouse and/or remained vacant from

26 approximately 2002 to 2004.  After TC RICH acquired the Property from a third

27 party in May 2005, the Property has been utilized for warehouse and distribution

28 purposes, including Plaintiffs' current logistics operations focused businesses.

*TC RICH v. Pacifica Chemical, et al.*        4        FIRST AMENDED
                                                    COMPLAINTCOMPLAINT

15. Pacifica Chemical occupied the Property from at least 1983~~0~~ to ~~1999~~ 2000 for its chemical manufacturing and distribution business, including the formulation of fabric softeners, dyes, and light detergents. The detergents and softeners were blended in mixing tanks before distribution and sale. Wastewater was generated when the mixing tanks were rinsed in order to receive new materials every week. Operations included the use of a 1,500-gallon three-stage clarifier located in the northwest exterior portion of the Property that was installed in 1986. The clarifier was connected to a system of trench drains to mixing tanks within the Property's structure.

16. Pacifica Chemical was issued a permit for industrial wastewater discharge (Permit Number 11027) by the Los Angeles County Department of Public Works (LACDPW) and the Los Angeles County Sanitation District (LACSD) in 1985. On-site operations included the blending of raw materials in mixing tanks prior to their distribution and sale. Detergents were stored in three above-ground storage tanks (ASTs) located in the southeastern corner of the building, which were reportedly 400, 1,000, and 2,000-gallons in size. According to the notices and self-monitoring reports, Pacifica Chemical was issued violations for excessive discharge of volatile organic compounds (VOCs) and heavy metals, including toluene, ethylbenzene, xylenes, and copper. Other VOCs detected in self-monitoring reports included 1,1-dichloroethane (DCA), 1,1,1,- trichloroethane (TCA) (1800 ug/L), and tetrachloroethene (PCE).

17. According to correspondence within the LACSD's files, a 2,000-gallon above-ground storage tank containing PCE was present on-site in 1985, reportedly located near the southwest corner of the subject building. Reportedly, Pacifica Chemical received the PCE in a bulk shipment that was pumped directly into the storage tank, prior to Pacifica Chemical subsequently repackaging into 55-gallon drums for resale purposes.

18. Pacifica Chemical was also registered with the Resource Conservation

*TC RICH v. Pacifica Chemical, et al.*          5

1  and Recovery Act-Small Quantity Generator (RCRA-SQG), Facility Index / Facility

2  Registry System (FINDS) as a small quantity generator of hazardous wastes in 1996

3  and a large quantity generator of hazardous wastes in 1989, although the type and

4  specific quantity of hazardous wastes is not listed.  The Property under Pacifica

5  Chemical was issued a general violation in 1993, which was abated in 1998.

6       19.    According to the Federal Insecticide, Fungicide, and Rodenticide and

7  Toxic Substances Control Act Tracking System (FTTS) listings, Pacific Chemical

8  was inspected in January 1996 and no violations were issued.

9       20.    By 2000, Pacifica Chemical ceased all manufacturing operations and

10  no longer generated industrial wastewater at the Property. The clarifier tank was

11  closed in place on the subject property in 2005 and the concrete trenches were also

12  filled in.

13  **Plaintiff's Purchase of and Appropriate Inquiry into the Property.**

14       21.    At or around the time of the purchase of the Property by TC RICH in

15  May 2005, in connection with financing of the Property and as a matter of due

16  diligence and reasonable inquiry, a Phase I Environmental Assessment Report for

17  the Property was prepared by a registered environmental assessor at A/E West

18  Consultants, Inc. of Irvine, California.  In preparing the report, A/E West also

19  reviewed an April 2003 Phase I report performed by JMK Environmental Solutions,

20  Inc. of Granada Hills, California, that recommended no further action or

21  investigation.  Based on its investigation and the historical operation of the clarifier

22  on the property by Pacifica, A/E West recommended a limited further investigation

23  solely comprised of the creation of a closure report for the clarifier with an

24  accompanying analysis of soil samples to be submitted for certification.  A true and

25  correct copy of the A/E West Phase I Environmental Assessment Report dated April

26  4, 2005 (excluding appendices) is attached as **Exhibit A**.

27       22.    In accordance with the recommendation by A/E West, Plaintiff

28  Fleischer contracted Aqua Science Engineers, Inc. of Irvine, California, to perform

---

*TC RICH v. Pacifica Chemical, et al.*          6          FIRST AMENDED
                                                            COMPLAINT~~COMPLAINT~~

1   the recommended subsurface analysis for closure of the clarifier.  Aqua Science

2   determined that a closure certificate for the Property and clarifier had already been

3   issued by the Los Angeles County Department of Public Works ("CLADPW") in

4   2004 based on representations made by Pacifica Chemical, without any apparent soil

5   sampling.  Despite the certificate, Aqua Science informed CLADWP that it would

6   perform soil sampling.  Aqua Science took soil samples at the Property under the

7   supervision of CLADWP on April 7, 2005, taking samples from only under the

8   clarifier and not elsewhere, as the CLADWP representative noted that the majority

9   of piping from the building to the clarifier was above ground and that CLADWP

10  would not require soil sampling along the piping.  Aqua Science made two borings

11  on either side of the closed clarifier, found no evidence of volatile organic

12  compounds and semi-volatile organic compounds, and concluded that the "use of

13  the wastewater clarifier at the subject site has not impacted the subsurface with

14  contamination."  A true and correct copy of Aqua Science's Project Report on

15  Subsurface Environmental Investigation of Soil for Wastewater Clarifier Closure at

16  the Property (excluding appendices) is attached as **Exhibit B**.

17        23.    Having made a reasonable inquiry into the potential environmental

18  issues and having received a finding of "no contamination" from the identified

19  recognized environmental condition, TC RICH proceeded with and completed its

20  purchase of the Property.

21  **Plaintiff's Discovery of Contamination at the Property.**

22        24.    In connection with the repayment of the purchase-money loan for the

23  Property, which was a 10-year term loan, a new Phase I Environmental Site

24  Assessment was performed by Andersen Environmental of Los Angeles, California,

25  in early 2015.  After completing its own review of businesses and environmental

26  data and records for the Property, Andersen concluded that the Pacifica Chemical

27  operations constituted a Recognized Environmental Condition based on their prior

28  handling and storage of PCE.  In this new Phase I report, Andersen recommended

*TC RICH v. Pacifica Chemical, et al.*          7          FIRST AMENDED COMPLAINT~~COMPLAINT~~

1   further soil testing, including testing of samples be performed near the clarifier and

2   at locations along the concrete trenches used by Pacifica Chemical to look for

3   contaminants that could have been discharged or released into the ground from

4   Pacifica Chemical's operations on the Property.  A true and correct copy of the

5   March 16, 2015 Phase I Environmental Site Assessment Report from Andersen

6   Environmental (excluding appendices) is attached as **<u>Exhibit C</u>**.

7         25.    In response to the recommendation from Andersen Environmental,

8   Plaintiffs engaged EEC Environmental of Orange, California, to perform a Phase II

9   report and investigation in order to assess recognized environmental conditions

10   identified in the Phase I Environmental Site Assessment prepared by Andersen

11   Environmental and to determine if these recognized environmental conditions have

12   resulted in a release of chemicals to the environment.  Specifically, EEC conducted

13   a limited subsurface investigation and indoor air sampling event at the Property in

14   two separate stages.  Following the testing, EEC prepared a report that detected PCE

15   in soil, soil gas and groundwater at the Property in concentrations and locations

16   consistent with discharge from Pacifica Chemical's operations at the Property.  A

17   true and correct copy of the Phase II Report from EEC (excluding appendices) is

18   attached as **<u>Exhibit D</u>**.

19         26.    Laboratory results from EEC's Phase II investigation indicated:

20         a.    Soil Sample concentrations of PCE ranging from 1.9 ug/kg to

21                 71.5 ug/kg;

22         b.    Soil Vapor concentrations of PCE that were highest beneath the

23                 former PCE storage tank / clarifier areas and increasing with

24                 depth, with concentrations ranging from 0.71 ug/L up to 799

25                 ug/L;

26         c.    Groundwater PCE contamination was detected in each of the five

27                 groundwater samples collected, with concentrations ranging

28                 from 1.4 ug/L to 530 ug/L, with the highest concentrations from

1                borings located near the eastern edge of the warehouse in the

2                vicinity of former floor drains; and

3       d.      Indoor Air PCE detected in the two locations tested within the

4                building on the Property in concentrations of 12 to 18 $\mu g/m^3$, in

5                excess of the California Human Health Screening Levels

6                (CHHSLs) for indoor air concentrations for

7                commercial/industrial sites.

8      27.     Along with the Phase II investigation and report, Plaintiff had EEC

9 prepare a technical memorandum to estimate remediation costs associated with the

10 contamination at the Property.  EEC's Tech Memo concluded "that the prior

11 occupant of the site, Pacifica Chemical, Inc. (Pacifica) should held be responsible

12 for the financial aspect of the investigation and remedial activities" because

13 Plaintiffs' activities at the Property "have not involved the use of hazardous

14 materials such as PCE."  EEC proposed to mitigate residual soil, soil vapor, and

15 groundwater contamination, as well as eliminate any indoor air risks from continued

16 vaporization of PCE and other volatile organic compounds on the Property using a

17 two technology remediation plan.  EEC proposed soil and soil vapor remediation by

18 a Soil Vapor Extraction system of 7 dual-nested wells (14 total wells) at an

19 estimated cost of $250,000.  EEC's proposed groundwater remediation by Enhanced

20 Reductive Dechlorination using 33 injection points to reduce PCE concentrations by

21 a magnitude or more, at an estimated cost of $365,000.  In addition to the direct cost

22 of remediation, EEC also estimated $75,000 in additional assessment and project

23 management costs, for an estimated total cost of remediation of $690,000.  A true

24 and correct copy of EEC's April 2015 Technical Memorandum –Order of

25 Magnitude Remediation Cost Estimate for the Property is attached as **Exhibit E**.

26      28.     Having received EEC's estimate of remediation costs, Plaintiffs then

27 engaged Partner Engineering and Science, Inc. of Torrance, California, to perform a

28 peer review of EEC's report and present a second Remedial Cost Estimate Letter.

*TC RICH v. Pacifica Chemical, et al.*      9      FIRST AMENDED COMPLAINT~~COMPLAINT~~

1  Partner Engineering provided the following proposal and estimate of costs for
2  remediation: Sub-slab depressurization system ($100,000 to $200,000); soil
3  remediation (likely $50,000 to $150,000, but potentially as high as $500,000 based
4  on further delineation to identify the extent of contamination); chemical injection to
5  address groundwater impacts ($100,000 to $150,000); and additional assessment
6  costs ($50,000 to $75,000).  As such, Partner Engineering's opinion indicated that
7  the potential costs to address potential soil gas, soil, and/or groundwater impacts are
8  expected to range from $300,000 to $575,000 (and maybe as high as $925,000).  A
9  true and correct copy of Partner Engineering's May 2015 Remedial Cost Estimate
10 Letter is attached as **Exhibit F**.

11                    **FIRST CAUSE OF ACTION**
12      **(Cost recovery and contribution based on owner liability under the**
13   **Comprehensive Environmental Response, Compensation, And Liability Act,**
14       **42 U.S.C. § 9601, *et seq*. - Against Defendant Pacifica Chemical)**

15       29.    Plaintiffs repeat and incorporate each and every allegation contained in
16 Paragraphs 1 through 27, inclusive, as though fully set forth herein.

17       30.    Pacifica Chemical is a person within the meaning of CERCLA §
18 101(21), 42 U.S.C. § 9601(21).

19       31.    At various times before cessation of Pacifica Chemical's operations at
20 the Property, hazardous substances were disposed of at the Property through a
21 release and/or threatened release at a time when Pacifica Chemical owned the
22 ~~Property~~facility.  As such, Pacifica Chemical is a person who owned a facility at the
23 time of disposal of hazardous substances within the meaning of Section 107(a)(2) of
24 CERCLA, 42 U.S.C. § 9607(a)(2).

25       32.    Plaintiffs are investigating and remediating the contamination at the
26 Property consistent with the National Contingency Plan and have incurred, and
27 continues to incur, response costs that are necessary and are consistent with the
28 National Contingency Plan.

---

*TC RICH v. Pacifica Chemical, et al.*          10          **FIRST AMENDED COMPLAINT**~~COMPLAINT~~

33.     The contamination disposed of at the Property through a release was caused solely by the acts of third-parties and Plaintiffs in no way contributed to the Contamination.

34.     Pursuant to Sections 107(a)(4)(B) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B) and 9613(f)(1), and Sections 113(f)(3)(B) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9613(f)(3)(B) and 9613(f)(1), Plaintiffs are entitled to cost recovery and contribution from Pacifica Chemical in connection with the Contamination at the Property.

**SECOND CAUSE OF ACTION**

**(Cost recovery and contribution based on operator liability under the Comprehensive Environmental Response, Compensation, And Liability Act, 42 U.S.C. § 9601, *et seq*. - Against the PRP Defendants)**

35.     Plaintiffs repeat and incorporate each and every allegation contained in Paragraphs 1 through 34, inclusive, as though fully set forth herein.

36.     Pacifica Chemical and Doe defendants 1 through 10, inclusive, (the "PRP Defendants") are each a person within the meaning of CERCLA § 101(21), 42 U.S.C. § 9601(21).

37.     At various times before cessation of Pacifica Chemical's operations at the Property, hazardous substances were disposed of at the Property through a release and/or threatened release at a time when Pacifica Chemical and/or the Doe defendants 1 through 10, inclusive, managed, directed or otherwise controlled operations at the Property, including operations specifically related to the acquisition, storage, use and/or disposal (including leakage) of hazardous substances.  As such, the PRP Defendants are persons who operated a facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C.§ 9607(a)(2).

38.     Plaintiffs are investigating and remediating the site consistent with the National Contingency Plan and have incurred, and continue to incur, response costs

1  that are necessary and are consistent with the National Contingency Plan.

2      39.     The contamination disposed of at the Property through a release was

3  caused solely by the acts of third-parties and Plaintiffs in no way contributed to the

4  Contamination.

5      40.     Pursuant to Sections 107(a)(4)(B) and 113(f)(1) of CERCLA,

6  42 U.S.C. §§ 9607(a)(4)(B) and 9613(f)(1), and Sections 113(f)(3)(B) and 113(f)(1)

7  of CERCLA, 42 U.S.C. §§ 9613(f)(3)(B) and 9613(f)(1), Plaintiffs are entitled to

8  cost recovery and contribution from the PRP Defendants in connection with the

9  contamination at the Property.

10                        **THIRD CAUSE OF ACTION**

11      **(Cost recovery and contribution based on arranger liability under the**

12  **Comprehensive Environmental Response, Compensation, And Liability Act,**

13          **42 U.S.C. § 9601,** *et seq*. **- Against the PRP Defendants)**

14      41.     Plaintiffs repeat and incorporate each and every allegation contained in

15  Paragraphs 1 through 40, inclusive, as though fully set forth herein.

16      42.     The PRP Defendants are each a person within the meaning of CERCLA

17  § 101(21), 42 U.S.C. § 9601(21).

18      43.     The PRP Defendants are liable under Section 107(a)(3) of CERCLA,

19  42 U.S.C. § 9607(a)(3), as persons who by contract, agreement, or otherwise

20  arranged for the disposal or treatment of hazardous substances that were related to

21  the Property.

22      44.     Plaintiffs are investigating and remediating the site consistent with the

23  National Contingency Plan and have incurred, and continue to incur, response costs

24  that are necessary and are consistent with the National Contingency Plan.

25      45.     The contamination disposed of at the Property through a release was

26  caused solely by the acts of third-parties and Plaintiffs in no way contributed to the

27  Contamination.

28      46.     Pursuant to Sections 107(a)(4)(B) and 113(f)(1) of CERCLA,

*TC RICH v. Pacifica Chemical, et al.*          12          FIRST AMENDED COMPLAINT~~COMPLAINT~~

1  42 U.S.C. §§ 9607(a)(4)(B) and 9613(f)(1), and Sections 113(f)(3)(B) and 113(f)(1)

2  of CERCLA, 42 U.S.C. §§ 9613(f)(3)(B) and 9613(f)(1), Plaintiffs are entitled to

3  cost recovery and contribution from the PRP Defendants in connection with the

4  contamination at the Property.

5                              **FOURTH CAUSE OF ACTION**

6                **(Declaratory Relief – Plaintiffs Against The PRP Defendants)**

7          47.    Plaintiffs repeat and incorporate each and every allegation contained in

8  Paragraphs 1 through 46, inclusive, as though fully set forth herein.

9          48.    CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), provides that in any

10  action for recovery of response costs, the court shall enter a declaratory judgment on

11  liability for response costs or damages that will be binding in any subsequent action

12  to recover further response costs or damages.

13          49.    The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., provides that

14  "[i]n a case of actual controversy within its jurisdiction ..., any court of the United

15  States ... may declare the rights and other legal relations of any interested party

16  seeking such declaration, whether or not further relief is or could be sought."

17          50.    Plaintiffs are informed and believe that the PRP Defendants have

18  refused to acknowledge their fair and reasonable share of past and future

19  investigatory and response costs related to the Property.

20          51.    Accordingly, there has arisen and now exists an actual controversy

21  between Plaintiffs and each defendant relating to liability and responsibility for the

22  costs at the Property, and how such costs should be allocated. The controversy is of

23  sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

24          52.    Absent a judicial declaration setting forth the parties' rights and

25  obligations, including the appropriate allocable shares under CERCLA, a

26  multiplicity of actions may result, and Plaintiffs may be obligated in the future to

27  pay costs and damages, that under CERCLA, are in fact the responsibility of the

28  PRP Defendants.

*TC RICH v. Pacifica Chemical, et al.*          13          FIRST AMENDED COMPLAINT~~COMPLAINT~~

1       53.    Pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), the

2   Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and any other applicable

3   statute, regulation or principle of law, Plaintiffs are entitled to a declaration from

4   this Court, and requests a judgment in its favor as set forth herein.  Such a

5   declaration would avoid the potential for a multiplicity of actions related to future

6   costs and effectuate a just and speedy resolution of the issues and liabilities.

7       54.    Plaintiffs seek the determination that should response costs be

8   necessary concerning the contamination at the Property, the PRP Defendants shall

9   jointly and severally be held liable for said costs, and that Plaintiffs shall have no

10  liability.

11                 **<u>FIFTH CAUSE OF ACTION</u>**

12      **(Continuing Private Nuisance – By TC RICH Against The PRP Defendants)**

13      55.    Plaintiff TC RICH repeats and incorporates each and every allegation

14  contained in Paragraphs 1 through 54, inclusive, as though fully set forth herein.

15      56.    TC RICH is informed and believes and thereupon alleges that the PRP

16  Defendants collectively occupied and maintained, continued to occupy and

17  maintain, and/or aided or assisted in creating conditions on the Property in such a

18  manner as to cause the release and continued presence of hazardous substances into

19  the soil and groundwater beneath the Property, and that the presence of said

20  hazardous substances (due to the physical interference as well as potential site health

21  and safety risks) is injurious to the free use and comfortable enjoyment of the

22  Property by Plaintiffs.

23      57.    The above-referenced injuries and interference is specially injurious to

24  TC RICH in a manner different in kind from that of the general public, in that the

25  hazardous substances that remain in the soil and groundwater beneath the Property

26  affected the physical condition of the Property, and has significantly interfered with

27  and continues to significantly interfere with Plaintiffs' ability to use, develop, sell,

28  let, insure or encumber the Property. The PRP Defendants' release and maintenance

---

*TC RICH v. Pacifica Chemical, et al.*    14    <span style="color:blue"><u>FIRST AMENDED COMPLAINT</u></span><u>COMPLAINT</u>

1  of hazardous substances has substantially and unreasonably interfered with, and

2  continues to substantially and unreasonably interfere with, Plaintiffs' use and

3  enjoyment of the Property.

4      58.    At all material times, the PRP Defendants had a duty not to permit or

5  allow the continuance of a nuisance, and the PRP Defendants have breached and are

6  breaching that duty by allowing hazardous substances to remain in the subsurface of

7  the Property.

8      59.    As set forth above, TC RICH is informed and believes and thereupon

9  alleges that the PRP Defendants maintained, have continued to maintain, and

10 created or assisted in the creation of a situation leaving hazardous substances in the

11 soil and groundwater beneath the Property without the consent or permission of

12 Plaintiffs.

13     60.    As set forth above, TC RICH is informed and believes and thereupon

14 alleges that it is both technically and economically feasible to complete a full and

15 comprehensive cleanup and removal of the hazardous substances knowingly

16 released by and maintained on the Property by the PRP Defendants, and that

17 because it is technically and economically feasible to abate the subsurface hazardous

18 substance conditions on the Property such conditions are not of a permanent nature.

19     61.    As a direct and proximate result of said continuing private nuisance TC

20 RICH has been damaged in sums exceeding the jurisdictional minimum of this

21 court, including damages which Plaintiffs may sustain in the future due the assertion

22 of third-party claims.  TC RICH will seek leave of the court to amend its complaint

23 to state the true amount of said damages when the same has been ascertained.

24     62.    TC RICH has no adequate remedy at law against Defendants for the

25 ongoing and threatened injuries posed by the continuing private nuisance, in that

26 that TC RICH would be required to maintain a multiplicity of judicial proceedings

27 to protect its interest.  TC RICH does not have an adequate remedy at law for

28 damages alone because it is difficult to determine what the actual costs of

1  remediating and monitoring will be, and whether future claims will be asserted
2  against Plaintiffs in connection with the hazardous substances knowingly released
3  by and maintained on the Property by the PRP Defendants.

4  **SIXTH CAUSE OF ACTION**

5  **(Continuing Trespass – By TC RICH Against The PRP Defendants)**

6  63.    Plaintiff TC Rich repeats and incorporates each and every allegation
7  contained in Paragraphs 1 through 62, inclusive, as though fully set forth herein.

8  64.    TC RICH is informed and believes and thereupon alleges that the PRP
9  Defendants caused and allowed the release of hazardous substances into the soil and
10 groundwater beneath the Property during the periods when the Pacifica Chemical
11 occupied, owned, and used the Property, and that this release or releases occurred
12 without the consent or permission of Plaintiffs.

13 65.    TC RICH is informed and believes and thereupon alleges that the PRP
14 Defendants maintained the continued presence on the Property of hazardous
15 substances released by Pacifica Chemical and/or the Doe Defendants into the soil
16 and groundwater beneath the Property during the periods when the Pacifica
17 Chemical occupied, owned, and used the Property, and that this maintenance
18 occurred without the consent or permission of Plaintiffs.

19 66.    TC RICH is informed and believes and thereupon alleges the hazardous
20 substances released by and maintained on the Property by the PRP Defendants
21 currently remain in the soil and groundwater beneath the Property and have not been
22 removed.

23 67.    TC RICH is informed and believes and thereupon alleges that it is both
24 technically and economically feasible to complete a full and comprehensive cleanup
25 and removal of the hazardous substances released on the Property by the PRP
26 Defendants, and that because it is technically and economically feasible to abate the
27 subsurface conditions resulting from the release of hazardous substances on the
28 Property such conditions are not of a permanent nature.

*TC RICH v. Pacifica Chemical, et al.*          16          **FIRST AMENDED COMPLAINT**COMPLAINT

1    68.    TC RICH is informed and believes and thereupon alleges the hazardous

2    substances released by and maintained on the Property by the PRP Defendants have

3    interfered with, and continue to interfere with, Plaintiffs' possession, use and

4    enjoyment of the Property by requiring (among other things): the installation and

5    maintenance of numerous groundwater and soil/soil vapor sampling wells on the

6    Property that limit or render unusable certain portions of the Property; incurring

7    significant environmental consulting, testing and legal costs in connection with

8    responding to the PRP Defendants' release and maintenance of hazardous

9    substances on the Property; and potential future liability for remediation costs,

10   damages and third-party claims associated with the PRP Defendants' release and

11   maintenance of hazardous substances on the Property.

12    69.    As a direct and proximate result of said continuing trespass, TC RICH

13   has been damaged in sums exceeding the jurisdictional minimum of this court,

14   including damages which Plaintiffs may sustain in the future due the assertion of

15   third-party claims.  TC RICH will seek leave of the court to amend its complaint to

16   state the true amount of said damages when the same has been ascertained.

17    70.    TC RICH has no adequate remedy at law against the PRP Defendants

18   for the ongoing and threatened injuries posed by the continuing trespass, in that that

19   TC RICH would be required to maintain a multiplicity of judicial proceedings to

20   protect its interest.  TC RICH does not have an adequate remedy at law for damages

21   alone because it is difficult to determine what the actual costs of remediating and

22   monitoring will be, and whether future claims will be asserted against Plaintiffs in

23   connection with the hazardous substances released by and maintained on the

24   Property by the PRP Defendants.

25               **<u>SEVENTH CAUSE OF ACTION</u>**

26          **(Negligence – By Plaintiffs Against the PRP Defendants)**

27    71.    Plaintiffs repeat and incorporate each and every allegation contained in

28   Paragraphs 1 through 70, inclusive, as though fully set forth herein.

---

*TC RICH v. Pacifica Chemical, et al.*          17          FIRST AMENDED COMPLAINT~~COMPLAINT~~

72.     Pacifica Chemical and the Doe Defendants had a duty to use reasonable care to avoid discharging or releasing the contamination into the soil or groundwater on the Property, and had a duty to use reasonable care to remove and to remediate the contamination at the Property.

73.     Pacifica Chemical and the Doe Defendants breached their duty of reasonable care by negligently allowing the release or discharge of the contamination into the soil and groundwater of the Property, and by failing to remove or remediate the contamination at the Property.

74.     As a direct and proximate result of the PRP Defendants' failure to use reasonable care, Plaintiffs suffered damages in an amount to be proven at trial including, but not limited to, costs associated with investigation and remediation of the contamination and consequential/special losses, including, but not limited to, loss or impairment of use and increased cost of financing.

75.     Plaintiffs are therefore entitled to an award of damages according to proof at trial.

## EIGHTH CAUSE OF ACTION

### (Negligence Per Se - By Plaintiffs Against the PRP Defendants)

76.     Plaintiffs repeat and incorporate each and every allegation contained in Paragraphs 1 through 75, inclusive, as though fully set forth herein.

77.     California Fish and Game Code Section 5650 provides that:

(a)     It is unlawful to deposit in, permit to pass into, or place where it can pass into the waters of this state any of the following:

(1)     Any petroleum, acid, coal or oil tar, lampblack, aniline, asphalt, bitumen, or residuary product of petroleum, or carbonaceous material or substance.

(2)     Any refuse, liquid or solid, from any refinery, gas house, tannery, distillery, chemical works, mill or factory of any kind.

(3)     Any sawdust, shavings, slabs, edgings.

1            (4)     Any factory refuse, lime, or slag.

2            (5)     Any cocculus indicus.

3
4            (6)     Any substance or material deleterious to fish, plant life, or bird life.

5      78.    California Health & Safety Code Section 5411 states that that:

6
7          "No person shall discharge sewage or other waste, or the effluent of treated sewage or other waste in any manner which will result in contamination, pollution, or a nuisance."

8
9      79.    California Health & Safety Code Section 5410 provides the following

10  definitions applicable to California Health & Safety Code Section 5411:

11          "Industrial waste" means any and all liquid or solid waste substance, not sewage, from any producing, manufacturing or processing operation of whatever nature.

12
13          "Contamination" means an impairment of the quality of the waters of the State by sewage or industrial waste to a degree which creates an actual hazard to the public health through poisoning or through the spread of disease. "Contamination" shall include any equivalent effect resulting from the disposal of sewage or industrial waste, whether or not waters of the State are affected.

14
15
16
17
18          "Pollution" means an impairment of the quality of the waters of the State by sewage or industrial waste to a degree which does not create an actual hazard to the public health but which does adversely and unreasonably affect such waters for domestic, industrial, agricultural, navigational, recreational or other beneficial use.

19
20
21
22
23          "Nuisance" means damage to any community by odors or unsightliness resulting from unreasonable practices in the disposal of sewage or industrial wastes.

24
25          "Waters of the State" means any waters, surface or

26  underground, including saline waters, within the boundaries of

27  the State as defined and described in Section 1 of Article XXI

28

---

*TC RICH v. Pacifica Chemical, et al.*      19      **FIRST AMENDED COMPLAINT**COMPLAINT

of the Constitution and as given greater precision in Sections 170, 171, and 172 of the Government Code.

80.     The PRP Defendants' conduct was legally required to conform with the requirements of Fish and Game Code Section 5650and to Health and Safety Code Sections 5410 and 5411.

81.     The PRP Defendants conduct violated the above stated statutes by allowing factory refuse, industrial waste and other materials harmful to fish, plant and bird life to be discharged and to contaminate or pollute the groundwater below the Property, which constitutes waters of the State.

82.     The PRP Defendants' violations of the above stated statutes proximately caused the contamination at the Property.

83.     The above stated statutes were designed to prevent contamination of the waters of the State, including groundwater, and the environmental harms suffered by Plaintiffs and caused by the PRP Defendants' conduct.

84.     Plaintiffs, including TC RICH as the owner of the Property and TC RICH and Fleischer as of persons affected by the Contamination, are members of the class of persons the above stated statutes are designed to protect.

85.     As a direct and proximate result of the PRP Defendants' failure to use reasonable care, Plaintiffs suffered damages in an amount to be proven at trial including, but not limited to, costs associated with investigation and remediation of the contamination and consequential/special losses, including, but not limited to, loss or impairment of use and increased cost of financing.

86.     Plaintiffs are therefore entitled to an award of damages according to proof at trial.

### NINTH CAUSE OF ACTION

**(Professional Negligence - By Plaintiffs Against**

**Aqua Science Engineers, Inc. and A/E West Consultants, Inc.)**

87.     Plaintiffs repeat and incorporate each and every allegation contained in Paragraphs 1 through 86, inclusive, as though fully set forth herein.

88.     At all relevant times herein mentioned, defendant AQUA SCIENCE ENGINEERS, INC. ("Aqua Science"), was and now is a professional corporation and an engineering firm employing individuals certified by the State of California as engineers and geologists and held, and holds itself out to be skilled in its profession in conducting Phase I and Phase II Environmental Site Assessments to evaluate potential environmental hazards, including evaluations of whether the historical record of properties indicates the past use of such properties as indicating the need for further study; testing and analysis to determine whether toxic and hazardous substances exist on such properties; and the evaluation and design of remediation for soil and groundwater contamination.

89.     At all relevant times herein mentioned, defendant A/E WEST CONSULTANTS, INC. ("A/E West"), was a corporation employing individuals registered by the State of California as environmental assessors and held, and holds itself out to be skilled in its profession in conducting Phase I Environmental Site Assessments to determine whether the historical record of properties indicates the past use of such properties as indicating the need for further study, testing and analysis to determine whether toxic and hazardous substances exist on such properties.

90.     In or about March 2005 defendant A/E West was engaged "to identify recognized environmental conditions that may have an impact on the" Property that is the subject of this suit "using readily available sources of information, interviews and field observations," in connection with Plaintiffs' planned purchase and financing of the property.  On information and belief, A/E West was aware that the Plaintiffs were planning on purchasing the Property but that the financing and purchase of the Property would depend on the Property being determined to be free and clear of toxic and hazardous substances.  On information and belief, A/E West

*TC RICH v. Pacifica Chemical, et al.*          21          FIRST AMENDED COMPLAINT~~COMPLAINT~~

1  was aware that Plaintiffs were an intended beneficiary of its evaluation of the

2  Property and the Phase I environmental Assessment it would issue.

3      91.    On or about April 4, 2005, A/E West issued the Phase I Environmental

4  Assessment Report attached hereto as **Exhibit A**.  In that report, A/E West

5  identified the prior use of chemicals at the Property in connection with the clarifier,

6  pits and trenches and recommended a limited further investigation solely comprised

7  of the creation of a closure report for the clarifier with an accompanying analysis of

8  soil samples to be submitted for certification.  A/E West provided no further

9  recommendation or identification of the substantial PCE contamination on the

10  Property.

11      92.    In or about April 2005 defendant Aqua Science was engaged to

12  perform a "subsurface environmental investigation of soil" at the Property that is the

13  subject of this suit in order to "to determine whether soil beneath a three-stage

14  wastewater clarifier had been impacted with contamination." Aqua Science was

15  specifically hired by Plaintiffs in response to the recommendation of the Phase I

16  Report issued by A/E West, received a copy of that Phase I Report and was aware of

17  its recommendation, and was aware that Plaintiffs were planning on purchasing the

18  Property but that the financing and purchase of the Property would depend on the

19  Property being determined to be free and clear of toxic and hazardous substances.

20  Plaintiffs performed all obligations they owed to Aqua Science.

21      93.    On or about April 7, 2005, Aqua Science performed soil sampling at

22  the Property, and decided to eschew sampling along the trenches and piping

23  associated with the clarifier.  On or about April 13, 2005, Aqua Science issued the

24  "Project Report on Subsurface Environmental Investigation of Soil for Wastewater

25  Clarifier Closure" at the Property hereto as **Exhibit B**.  In that report, Aqua Science

26  concluded that volatile organic compounds were not present in the Property's soil

27  and that "the wastewater clarifier at the subject site has not impacted the subsurface

28  with contamination."  Aqua Science specifically did "not recommend that any

---

*TC RICH v. Pacifica Chemical, et al.*          22

1  further subsurface investigation be conducted at this site in relation to the

2  wastewater clarifier."

3      94.    In reliance on the Phase I Environmental Site Assessment issued by

4  defendant A/E West and the clean Phase II issued by Aqua Science, Plaintiffs

5  expended funds and incurred debt and proceeded to close the escrow for the

6  purchase of the subject Property.

7      95.    Defendant A/E West, in preparing the Phase I Environmental Site

8  Assessment and in rendering opinions and recommendations to plaintiffs negligently

9  and carelessly performed the preparation of the subject Phase I Environmental Site

10  Assessment.

11      96.    Defendant Aqua Science, in preparing the Project Report on Subsurface

12  Environmental Investigation of Soil for Wastewater Clarifier Closure and in

13  rendering opinions and recommendations to plaintiffs negligently and carelessly

14  performed the soil sampling and evaluation of the subsurface conditions of the

15  property, especially in light of the prior use of PCE at the Property and the presence

16  of the storage tank, clarifier, and associated system of trenches.

17      97.    In connection with the Plaintiffs' refinancing and repayment of the

18  purchase-money loan for the Property in 2015, new environmental assessments of

19  the Property have been performed by Andersen Environmental of Los Angeles,

20  California and EEC Environmental of Orange, California.  These assessments

21  competently evaluated the Property and uncovered PCE contamination from the

22  prior use of PCE on the Property by Pacifica Chemical.  Prior to these reports,

23  Plaintiffs had no reason to know that their reliance on the professional work of

24  Defendants A/E West and Aqua Science had been misplaced.  As set forth above,

25  costs for the remediation of the pollution and contamination at the Property are

26  currently unknown, but have been estimated to range anywhere between $300,000

27  and $925,000.

28      98.    As a direct and proximate result of the professional negligence of

_TC RICH v. Pacifica Chemical, et al._          23          **FIRST AMENDED COMPLAINT**COMPLAINT

Defendants A/E West and Aqua Science, Plaintiffs have suffered damages in an amount not fully known by Plaintiffs at this time, but reasonably believed by them to be in excess of the cost of cleaning the toxic and hazardous materials from said Property, the cost of compliance with governmental clean-up orders, delays and additional costs or fees in refinancing the Property, and diminution in value and such other consequential damages the actual nature or amount of which is not yet known to Plaintiffs.

**TENTH CAUSE OF ACTION**

**(Injunctive Relief Under RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972(a)(1)(B) against Pacifica Chemical))**

99.   Plaintiffs re-allege and incorporate by reference herein paragraphs 1-98, inclusive, as though fully set forth herein.

100.   Plaintiffs have given the requisite notice to Defendant Pacifica Chemical pursuant to RCRA § 7002(b)(2)(A) (42 U.S.C. § 6972(b)(2)(A)) and 40 C.F.R. 254, a true and correct copy of which is attached to this complaint as Exhibit "G" and incorporated herein by reference.

101.   Pacifica Chemical is a liable party under RCRA as a "person" who falls within RCRA § 1004(15) (42 U.S.C. § 6903(15)).

102.   Pacifica Chemical is a past "owner" of a disposal facility under RCRA at the Property.

103.   Pacifica Chemical is a past "generator" under RCRA of hazardous wastes disposed of at the Property.

104.   Pacifica Chemical is a past "operator" under RCRA of a disposal facility at the Property

105.   The Property is a past "storage" and/or "disposal facility" within the meaning of RCRA.

106.   Pacifica Chemical contributed to the "handling, storage, treatment, transportation, or disposal" of hazardous wastes at and emanating from the Property.

*TC RICH v. Pacifica Chemical, et al.*          24          FIRST AMENDED COMPLAINT~~COMPLAINT~~

1  The PCE released at the Property is "hazardous waste" within the meaning of
2  RCRA § 3001 (41 U.S.C. § 6921).

3      107.   An "imminent and substantial endangerment to the health or the
4  environment" within the meaning of RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972
5  (a)(1)(B)) has existed and continues to exist at the Property and in the groundwater
6  contamination emanating from the Property.  The endangerment is due to Pacifica
7  Chemical's past handling, storage, treatment or disposal of PCE.

8      108.   The release of PCE at the Property has resulted in the need to
9  investigate and characterize volatile organic compounds (VOCs), including PCE and
10 its daughter compounds, in soil, soil gas, and groundwater beneath the Property and
11 to the east, assess potential risks to human health associated with PCE in soil vapor
12 to the south and east of the Property, and implement a remedial soil vapor/multi-
13 phase extraction (SVE/MPE) pilot program to contribute to abatement of PCE at the
14 Property.

15     109.   Plaintiffs request the Court, pursuant to RCRA § 7002(a)(2) (42 U.S.C.
16 § 6972(a)(2)), to enjoin Pacifica Chemical from continuing to endanger health and
17 the environment, and to order Pacifica Chemical to remediate immediately the
18 source(s) of PCE on the Property from its past activities, cleanup the groundwater
19 contaminated by PCE beneath and downgradient from the Property, continue to
20 implement a soil vapor/multi-phase extraction program until all elevated soil gas
21 and indoor air concentrations of PCE and its daughter chemicals are remediated, and
22 take all other actions necessary to eliminate the groundwater and other
23 contamination that has emanated from the Property.

24     98.110.    Plaintiffs have served a copy of this complaint on the United
25 States Attorney General and the Administrator of the EPA, pursuant to RCRA
26 § 7002(b)(2)(F) (42 U.S.C. § 6972(b)(2)(F)).

27                        **PRAYER FOR RELIEF**

28

---

Formatted: Indent: Left:  0", First line:  0.5", No widow/orphan control

Formatted: Body Text, Line spacing:  1.5 lines, No widow/orphan control

Formatted: No widow/orphan control

1    WHEREFORE, Plaintiffs pray for judgment jointly and severally against the

2    Defendants as follows:

3        1.    The recovery of such above-described toxic cleanup costs for the

4    Property from Defendants PACIFICA CHEMICAL, INCORPORATED, and DOES

5    1 through 10, inclusive, and, further, that this court allocate such costs in an

6    equitable manner among said defendants;

7        2.    A judgment of this court in declaratory relief against Defendants

8    PACIFICA CHEMICAL, INCORPORATED, and DOES 1 through 10, inclusive,

9    for an equitable allocation among said defendants for the future clean-up costs to be

10   incurred for the removal of all toxic and hazardous substances from the Property

11   consistent with the NCP;

12       3.    For an award against the PRP Defendants for past damages resulting

13   from the continuing trespass and continuing private nuisance caused by the release

14   and presence of hazardous substances on the Property;

15       4.    For injunctive relief to compel the PRP Defendants to abate and

16   remove the current continuing trespass and continuing private nuisance caused by

17   the release and presence of hazardous substances on the Property;

18       5.    For general damages according to proof in an amount in excess of the

19   jurisdiction of the above-entitled court;

20       6.    For all consequential damages and related incidental expenses

21   according to proof, including but not limited to costs associated from loss of use or

22   Plaintiffs' increased cost of financing the Property;

23       7.    For plaintiffs' reasonable attorney fees recoverable under 42 U.S.C.

24   § 6972(e), as well as based on contract, and incurred as a result of attorney fees

25   expended as proper clean-up costs;

26       8.    For a declaration pursuant to the Declaratory Judgments Act, 28 U.S.C.

27   § 2201, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) and any other

28   applicable statutes, regulations or principles of law, adjudging and decreeing that the

1    PRP Defendants are jointly and severally liable to Plaintiffs for all response costs

2    related to the Property, including but not limited to, investigation and remediation

3    costs, and for such judgment to be binding in any subsequent action or actions to

4    recover further response costs related to the Property;

5        8. 9.   For an order pursuant to RCRA § 7002(a)(2) (42 U.S.C. §6972(a)(2))

6    requiring Pacifica Chemical to remediate the source(s) of PCE on the Property,

7    cleanup the groundwater contaminated by PCE beneath and downgradient from the

8    Property, continue to implement a soil vapor/multi-phase extraction program until

9    all elevated soil gas and indoor air concentrations of PCE and its daughter chemicals

10   are remediated, and take all other actions necessary to eliminate the groundwater

11   contamination and other contamination on and emanating from the Property

12   resulting in an imminent and substantial endangerment to health or the environment

13   within the meaning of RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972 (a)(1)(B));

14       9. 10.   For an award of prejudgment interest calculated in accordance with the

15   law on all sums awarded;

16       10. 11.  For costs of suit herein incurred;

17       11. 12.  For such other and further relief as this court may deem just and proper.

18

19   Dated: March 21, 2019 Dated: March 21, 2019      **RAINES FELDMAN LLP**
                                                       **RAINES FELDMAN LLP**
20

21                                            By: _____

22                                                JOHN S. CHA

23                                                Attorneys for Plaintiffs TC Rich, LLC, Rifle
                                                  Freight Inc., Fleischer Custom Brokers,
24                                                Richard G. Fleischer, and Jacqueline Fleischer

25                                            By: _____

26                                                JOHN S. CHA, ESQ.
                                                  STEVEN T. GEBELIN, ESQ.
27

28                                                Attorneys for Plaintiffs

1   TC RICH, LLC, Rifle Freight, Inc., Fleischer
2   Customs Brokers, Richard G. Fleischer, and
    Jacqueline Fleischer
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1              **DEMAND FOR JURY TRIAL**

2     Plaintiffs TC RICH, LLC, Rifle Freight, Inc., Fleischer Customs Brokers,

3 Richard G. Fleischer, and Jacqueline Fleischer demand a trial by jury on all causes

4 of action upon which jury trial is available.

5

6 Dated: March 21,         **RAINES FELDMAN LLP**
   2019 ~~Dated: March 21, 2019~~ ~~RAINES FELDMAN LLP~~

7

8                By: _____

9                    JOHN S. CHA
                   Attorneys for Plaintiffs TC Rich, LLC, Rifle

10                    Freight Inc., Fleischer Custom Brokers,

11                    Richard G. Fleischer, and Jacqueline Fleischer

12                ~~By: _____~~

13                    ~~JOHN S. CHA, ESQ.~~
                   ~~STEVEN T. GEBELIN, ESQ.~~

14

15                    ~~Attorneys for Plaintiffs~~
                   ~~TC RICH, LLC, Rifle Freight, Inc., Fleischer~~

16                    ~~Customs Brokers, Richard G. Fleischer, and~~

17                    ~~Jacqueline Fleischer~~

18

19

20

21

22

23

24

25

26

27

28

*TC RICH v. Pacifica Chemical, et al.*     1     **DEMAND FOR JURY TRIAL**

1   **RAINES FELDMAN LLP**
2   JOHN S. CHA (SBN 129115)
    jcha@raineslaw.com
3   1800 Avenue of the Stars, 12th Floor
4   Los Angeles, California 90067
    Telephone: (310) 440-4100
5   Facsimile: (424) 239-1613
6   ~~RAINES FELDMAN LLP~~
    ~~JOHN S. CHA, ESQ. (SBN 129115)~~
7   ~~jcha@raineslaw.com~~
    ~~STEVEN T. GEBELIN (SBN 261507)~~
8   ~~sgebelin@raineslaw.com~~
9   ~~9720 Wilshire Boulevard, 5th Floor~~
    ~~Beverly Hills, California 90212~~
10  ~~Telephone:  (310) 440-4100~~
11  ~~Facsimile:   (424) 239-1613~~

12  Attorneys for Plaintiffs
13  TC RICH, LLC, Rifle Freight, Inc., Fleischer
    Customs Brokers, Richard G. Fleischer, and
14  Jacqueline Fleischer

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19  TC RICH, LLC, a California Limited          Case No. CV 15-4878 DMG (AGRx)
20  Liability Company, RIFLE FREIGHT,
    INC., a California corporation,             *Assigned to the Hon. Dolly M. Gee*
21  FLEISCHER CUSTOMS BROKERS, a                ~~Case No.~~
    sole proprietorship, RICHARD G.
22  FLEISCHER, an individual, and               **CERTIFICATE: DECLARATION OF**
    JACQUELINE FLEISCHER, an                    **PLAINTIFF'S ATTORNEY**
23  individual,

24              Plaintiffs,

25      v.

26  PACIFICA CHEMICAL
    INCORPORATED, a California
27  Corporation, AQUA SCIENCE
    ENGINEERS, INC., a California

28  _____
    *TC RICH v. Pacifica Chemical, et al.*        1        **CCP 411.35 CERTIFICATION**

                                                                    4847-8808-8968.v3

1  Corporation, A/E WEST
   CONSULTANTS, INC., a Nevada
2  Corporation, and DOES 1 through 10,
   inclusive,

3          Defendants.

4          I, Steven T. Gebelin, declare the following:

5          1.      I am an attorney for Plaintiffs TC RICH, LLC, Rifle Freight, Inc.,

6   Fleischer Customs Brokers, Richard G. Fleischer, and Jacqueline Fleischer in the

7   above-entitled action.

8          2.      I have reviewed the facts of Plaintiffs' case.

9          3.      I have consulted with and received an opinion from one professional

10  geologist who is licensed to practice by the California Board for Professional

11  Engineers, Land Surveyors, and Geologists, and practices in this state.

12         4.      That person consulted gave an opinion that Aqua Science Engineers,

13  Inc. and A/E West Consultants, Inc., defendants in the above action, were negligent

14  in their respective performance of the professional services of environmental

15  assessment and/or geology.

16         5.      I reasonably believe that such professional is knowledgeable in the

17  relevant issues involved in the above-entitled action.

18         6.      I have concluded on the basis of such review and consultation that there

19  is reasonable and meritorious cause for the filing of claims against Aqua Science

20  Engineers, Inc. and A/E West Consultants, Inc. in the above-entitled action.

21

22         I declare under penalty of perjury pursuant to the laws of the United States

23  that the foregoing is true and correct.

24         Executed on this the 26th day of June, 2015 in Beverly Hills, California.

25

26

27

28
_____
*TC RICH v. Pacifica Chemical, et al.*          2          **CCP 411.35 CERTIFICATION**

4847-8808-8968.v3

1                      Steven T. Gebelin

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    *TC RICH v. Pacifica Chemical, et al.*       3        **CCP 411.35 CERTIFICATION**