1  Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
2  Jon G. Lycett   SBN 209425  JLycett@PaladinLaw.com
   Kirk M. Tracy  SBN 288508  KTracy@PaladinLaw.com
3  PALADIN LAW GROUP® LLP
4  220 W. Gutierrez Street
   Santa Barbara, CA  93101
5  Telephone:  (805) 898-9700
6  Facsimile:   (805) 852-2495

7  Counsel for Defendant Pacifica Chemical, Incorporated

8
9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11
   TC RICH, LLC *et al.*,                    Case No. 2:15-cv-4878-DMG(AGRx)
12
              *Plaintiffs*,                  DECLARATION OF BRET A.
13                                           STONE IN SUPPORT OF
        *v.*                                 PACIFICA'S OPPOSITION TO
14                                           PLAINTIFF'S MOTION FOR (1)
   PACIFICA CHEMICAL                         MODIFICATION OF SCHEDULING
15 INCORPORATED, *et al.*,                   ORDER AND (2) LEAVE TO FILE
                                             FIRST AMENDED COMPLAINT
16            *Defendants*.
                                             *Assigned to Judge Dolly M. Gee*
17
                                             Hearing Date:  April 19, 2019
18                                           Time:  9:30 a.m.
                                             Courtroom:  8C
19
20                                           Action filed:  June 26, 2015
                                             Discovery cut-off: None set
21 AND RELATED CROSS-ACTIONS                 Trial date: None set

22

23 I, Bret A. Stone, hereby declare as follows:

24      1.      I am an attorney in good standing and am licensed to practice law in all

25 of the courts in the State of California.  I am a partner with the law firm of Paladin

26 Law Group® LLP which represents Defendant Pacifica Chemical Incorporated

27 ("Pacifica"). As a result of my work on Pacifica's behalf in this action, I have

28 personal knowledge of the matters stated herein and could and would competently



DECLARATION OF BRET A. STONE

1    testify thereto if called upon to do so.

2        2.    Pacifica's position is that this matter can only be settled if a sum of

3    money is put into a remediation trust fund for full cleanup of the subject

4    contamination at the property, with oversight for that cleanup resting in the hands of

5    the current property owner, TC Rich, LLC ("TC Rich").

6        3.    The Department of Toxic Substances Control ("DTSC"), the California

7    environmental agency with jurisdiction over the property, initially required that a

8    Facility Initiated Corrective Action ("FICA") Agreement be executed to establish its

9    oversight over the investigation and remediation activities at the property, prior to

10    allowing any work to be performed under the Remedial Action Workplan ("RAW").

11        4.    Accordingly, in May 2018, DTSC sent a draft FICA Agreement to

12    Pacifica, which did not include TC Rich as a party to the agreement. In keeping with

13    its position on final resolution of this matter, Pacifica's edits to the draft agreement

14    included the addition of TC Rich, because it is the current owner of the property and

15    is therefore a liable party under CERCLA Section 107(a). I then distributed that

16    edited version of the proposed agreement.  It was never Pacifica's intent for this edit

17    to signal any kind of refusal to continue working towards settlement in good faith, as

18    it has done from the outset of this matter.

19        5.    In keeping with its good faith intent to move forward, when an impasse

20    with Plaintiffs over the FICA Agreement became evident, Pacifica requested that

21    DTSC allow the groundwater pilot test, which is a component of the overall RAW,

22    to proceed without a FICA agreement. Performing the groundwater pilot study will

23    allow for a clearer estimate of the total costs of remediating the contamination that is

24    the subject matter of this litigation. Pacifica anticipates that its consultant will be able

25    to provide a fixed-price bid for the full cleanup after the pilot study data is received.

26    This will facilitate final settlement of this matter.

27        6.    Initially, DTSC refused to give final approval of the RAW or allow any

28    work to be done under the RAW without a signed FICA Agreement. TC Rich refused



-2-                                        Case No. 2:15-cv-4878-DMG(AGR)

DECLARATION OF BRET A. STONE

1   to sign the FICA Agreement.

2       7.      Regardless of the administrative dispute with DTSC and Plaintiffs,

3   Pacifica at no time indicated that it was refusing to continue with the necessary pilot

4   study, and it continued to work to overcome the impasse with DTSC.

5       8.      Subsequently, around the time of the February 22, 2019 mediation

6   between the parties to this matter, DTSC changed course and agreed to let the pilot

7   test go forward *without an executed FICA Agreement*.

8       9.      Discussions leading to the commencement of the pilot test are nearly

9   complete. On February 26, 2019, after discussions with DTSC, Pacifica's

10  environmental consultant, Murex Environmental, Inc. ("Murex") sent a letter

11  requesting approval of commencement of the groundwater pilot test. I was copied on

12  the transmittal of that letter. Attached hereto as **EXHIBIT A**, is a true and correct

13  copy of the February 26, 2019 letter from Murex. It indicates that DTSC's technical

14  team had approved the RAW, although formal approval from DTSC was still

15  pending, and that Pacifica is committed to reimburse DTSC for oversight costs

16  associated with the groundwater pilot test. *See* Ex. A.

17      10.     DTSC subsequently indicated that it would prefer for the groundwater

18  pilot test to be removed from the scope of work under the RAW and be submitted as

19  a separate technical memorandum for approval. Accordingly, on March 19, 2019,

20  Murex complied and submitted a new letter and proposed workplan requesting

21  approval of commencement of the pilot study detailed in the separate workplan

22  (referred to as the "ERD Pilot Test Workplan"). Attached hereto as **EXHIBIT B**, is

23  a true and correct copy of the March 19, 2019 letter from Murex, to which I was

24  copied. For the sake of brevity, the workplan is not attached. The March 19, 2019

25  letter from Murex again indicates that Pacifica is committed to reimburse DTSC for

26  oversight costs associated with the groundwater pilot test. *See* Ex. B.

27      11.     Subsequently, on March 21, 2019, DTSC sent an email to the Regional

28  Water Quality Control Board, indicating that DTSC was expecting to approve a



DECLARATION OF BRET A. STONE

1  separate workplan to implement the groundwater pilot test without a signed FICA

2  Agreement. I received a copy of that email. Although we still await a final approval

3  by DTSC, it is fully anticipated.

4      12.   Therefore, the dispute regarding the FICA Agreement has been

5  resolved, for the time being. There is no longer an impediment to performing the

6  groundwater pilot test.

7      13.   Also, attached hereto as **EXHIBIT C** is a true and correct copy of

8  plaintiffs' May 17, 2017 letter to Pacifica purporting to provide "Notice of

9  Endangerment and Intent to File Suit Pursuant to RCRA."

10      14.   Based on my experience with settlement negotiations in this matter, I

11  believe that creating new rights and liabilities at this late stage will complicate

12  settlement negotiations and the parties' ability to settle this case.

13      I declare under penalty of perjury under the laws of the United States that the

14  foregoing is true and correct.

15      Executed this 26th day of March, 2019 in the County of Santa Barbara.

16  

17                                  */s/ Bret A. Stone*

                                _____

18                                  Bret A. Stone

19

20

21

22

23

24

25

26

27

28



# EXHIBIT A



**February 26, 2019**

Department of Toxic Substances Control
9211 Oakdale Avenue
Chatsworth, California 91311-6505

Attention:     Ms. Sara Vela, Project Manager

**Subject:        Request for Approval of Pilot Test Commencement
                  Former Pacifica Chemical Site, Los Angeles, California**


Dear Ms. Vela:

Murex Environmental, Inc. (Murex) is providing this letter to the California Environmental Protection Agency, Department of Toxic Substances Control (DTSC) to request your agency's concurrence with the commencement of groundwater remediation pilot testing activities at the former Pacifica Chemical site, located at 132 W. 132nd Street, in Los Angeles, California (Site).

As you know, the Removal Action Workplan (RAW) has the approval of your technical team and has completed the public participation and comment period.  Although formal approval of the RAW is pending from DTSC, we find no reason to delay the implementation of a critical first step in the remedy, which is the proposed groundwater remediation pilot test.  The pilot test is essential to vet the efficacy of the proposed remedy and provide confidence to project stakeholders as they plan for the duration and cost of the full-scale cleanup.

In the execution of the pilot test, our client reiterates their commitment to reimburse DTSC for their oversight costs during the test's implementation and performance monitoring phases and acknowledges DTSC's role as oversight body.  We anticipate that technical deliverables, which will be required as per the Regional Board's discharge permit, will be quarterly performance monitoring reports and a pilot test report detailing the outcome and design implications of the test results.

Should you have any questions or concerns regarding the material herein, please do not hesitate to contact the undersigned at (714) 508-0800.

# EXHIBIT B



**March 19, 2019**

Department of Toxic Substances Control
9211 Oakdale Avenue
Chatsworth, California 91311-6505

Attention:      Ms. Sara Vela, Project Manager

**Subject:      Request for Approval of Pilot Test Commencement
Former Pacifica Chemical Site, Los Angeles, California**


Dear Ms. Vela:

Murex Environmental, Inc. (Murex) is providing the attached workplan to the California Environmental Protection Agency, Department of Toxic Substances Control (DTSC) to request your agency's concurrence with the commencement of groundwater remediation pilot testing activities at the former Pacifica Chemical site, located at 132 W. 132nd Street, in Los Angeles, California (Site).

The attached workplan provides design basis and an implementation plan for a remedial pilot test. The memo proposes to conduct a pilot-scale anaerobic bioremediation program that will include injection of electron donor, potable water, and DHC bacteria, as well as a period of sampling/performance monitoring.

In the execution of the pilot test, our client reiterates their commitment to reimburse DTSC for their oversight costs during the test's implementation and performance monitoring phases and acknowledges DTSC's role as oversight body. We anticipate that technical deliverables, which will be required as per the Regional Board's discharge permit, will be quarterly performance monitoring reports and a pilot test report detailing the outcome and design implications of the test results.

Should you have any questions or concerns regarding the material herein, please do not hesitate to contact the undersigned at (714) 508-0800.

Sincerely,
MUREX ENVIRONMENTAL, INC.

**Jeremy R. Squire**
**Vice President**

Cc:          RWQCB; Attn: Mr. Peter Raftery
             Paladin Law Group; Attn: Mr. Bret Stone

Attachments: *ERD Pilot Test Workplan*, Former Pacifica Chemical Site, March 19, 2019

Sincerely,
MUREX ENVIRONMENTAL, INC.

**Jeremy R. Squire**
**Vice President**

Cc:     RWQCB; Attn: Mr. Peter Raftery
        Paladin Law Group; Attn: Mr. Bret Stone

# EXHIBIT C



**Irvine**
18401 Von Karman Avenue, Suite 360
Irvine, California 92612

**Century City**
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067

Direct: 310.988.4298
Main: 310.440.4100
www.raineslaw.com

Fax: 424.239.1613
jcha@raineslaw.com

May 17, 2017

<u>**VIA E-MAIL AND CERTIFIED MAIL**</u>

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
3 W. Carrillo Street, Suite 212
Santa Barbara, California 93101

Re**:**    **Notice of Endangerment and Intent to File Suit Pursuant to RCRA section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B)**

Dear Mr. Stone:

TC RICH, LLC ("TC RICH"), Rifle Freight, Inc., Fleischer Customs Brokers, and individuals Richard G. Fleischer and Jacqueline Fleischer (collectively, "Plaintiffs") hereby provide Pacifica Chemical, Incorporated ("Pacifica Chemical") with this Notice of Endangerment and Intent to File Suit pursuant to section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B).  This Notice addresses environmental conditions caused by the handling, storage, treatment, transportation, or disposal of solid or hazardous waste at the real property commonly known as 132 West 132nd Street, Los Angeles, California (the "Property"), currently owned by TC RICH and previously owned by Pacifica Chemical, which may present an imminent and substantial endangerment to human health or the environment, in violation of RCRA section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

RCRA requires that a notice of intent to sue be provided at least ninety (90) days prior to initiation of a civil action under RCRA section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).  The RCRA 90-day notice period is intended, in part, to provide the noticed party a reasonable period of time to remedy the alleged violations.  To this end, Plaintiffs are prepared to timely engage in good faith discussions with Pacifica Chemical with the goal of cooperatively resolving these matters.

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
May 17, 2017
Page 2

Direct: 310.988.4298
Fax: 424.239.1613
jcha@raineslaw.com

Alternatively, in the event Pacifica Chemical fails to take prompt and appropriate action to address these continuing and ongoing violations, Plaintiffs intends to file RCRA claims by amendment to its pleadings in the current action between the parties in the United States District Court[1] as necessary to seek injunctive relief, civil penalties, recovery of attorneys' fees, and other such relief as may be available under RCRA.

### A.  SOLID AND/OR HAZARDOUS WASTE AT THE PROPERTY

This Notice concerns solid and hazardous waste discharged from the Property which may present an imminent and substantial endangerment to health or the environment. Pacifica Chemical was issued a permit for industrial wastewater discharge (Permit Number 11027) by the Los Angeles County Department of Public Works (LACDPW) and the Los Angeles County Sanitation District (LACSD) in 1985.  Its on-site operations included the blending of raw materials in mixing tanks and storage of detergents in above-ground storage tanks (ASTs) located in the southeast corner of the building on the property.  Pacifica Chemical, according to the notices and self-monitoring reports, was issued violations for excessive discharge of volatile organic compounds (VOCs) and heavy metals, including toluene, ethylbenzene, xylenes, and copper.

The alleged endangerment involves contamination from PCE and various detected degradation or "daughter" compounds, including without limitation, trichloroethylene ("TCE"), methyl tert-butyl ether ("MTBE"), and Freon 11 at and emanating from the Property, and that have migrated, and continue to migrate, to and beneath the Property.

Concentrations of these chemicals exceed regulatory standards for soil and groundwater.  California's water quality objectives exist to ensure protection of the beneficial uses of water.  As set forth in the *Water Quality Control Plan* for the Los Angeles Basin ("Basin Plan"), adopted on June 13, 1994, the Regional Board has designated beneficial uses for groundwater in the Central Basin – where the Property is located – including municipal and domestic drinking water supplies, and has established water quality objectives for the protection of these beneficial uses.  The State has adopted Maximum Contaminant Levels ("MCLs") for PCE and TCE of 5 µg/L.  MCLs are adopted as regulations, placing primary emphasis on the protection of public health.  Concentrations of PCE and TCE in groundwater beneath and migrating from the Property significantly exceed their respective MCLs.

---

[1] *TC RICH, LLC, et. al v. Pacifica Chemical Incorporated, et al.*, and related cross-claims, Case No. 2:15-cv-4878, currently pending before the United States District Court for Central District of California, in which Plaintiffs have brought claims under the Comprehensive Environmental Response and Recovery Act of 1980 (CERCLA) and other legal theories for declaratory relief, recovery of response costs, and other damages.

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
May 17, 2017
Page 3

Direct: 310.988.4298
Fax: 424.239.1613
jcha@raineslaw.com

**B.   IMMINENT AND SUBSTANTIAL ENDANGERMENT**

RCRA's imminent and substantial endangerment provision is codified at 42 U.S.C. section 6972(a)(1)(B).  It authorizes any person to bring suit in federal court against any person "including . . . any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).

RCRA defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid or hazardous waste ... may enter the environment or be ... discharged into any waters, including ground waters."  42 U.S.C. § 6903(3).  The same section defines hazardous waste generation broadly as "... the act or process of producing hazardous waste."  42 U.S.C. § 6903(6).  The statute also defines "solid waste" broadly to mean "any garbage, refuse, . . . and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and community activities . . . ." 42 U.S.C. § 6903(27).  Spilled or otherwise disposed PCE is a "solid waste" because it is discarded material.  Spilled or otherwise disposed PCE also qualifies as "hazardous waste," because it may "pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."  42 U.S.C. § 6903(5)(B).

For all of the reasons set forth below, Pacifica Chemical's failure to take action to prevent its VOC groundwater plume from migrating to and further impacting the Property, or to remediate its past and continuing waste discharges at the Property, may present an imminent threat to human health or the environment.

**C.   THE PROPERTY**

**1.   Pacifica Chemical's Operations at the Property.**

TC RICH is the record owner of the Property and recently discovered chemical contamination at the Property.  The Property was originally developed in 1978 to be occupied by Pacifica Chemical for chemical manufacturing and distribution.  Pacifica Chemical (including operations under various trade and corporate names) used the Property for these purposes until at least 1999.  The Property was then vacant from approximately 2002-2004.  After TC RICH acquired the Property in May 2005, the Property has been utilized for warehouse and distribution purposes, including TC RICH's current logistics operations focused business.

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
May 17, 2017
Page 4

Direct: 310.988.4298
Fax: 424.239.1613
jcha@raineslaw.com

Pacifica Chemical occupied the Property from at least 1980 to 1999 for its chemical manufacturing and distribution business, including the formulation of fabric softeners, dyes, and light detergents.  The detergents and softeners were blended in mixing tanks before distribution and sale.  Wastewater was generated when the mixing tanks were rinsed in order to receive new materials every week.  Operations included the use of a 1,500-gallon three-stage clarifier located in the northwest exterior portion of the Property that was installed in 1986.  The clarifier was connected to a system of trench drains to mixing tanks within the Property's structure.

As stated above, Pacifica Chemical was issued a permit for industrial wastewater discharge (Permit Number 11027) by the Los Angeles County Department of Public Works (LACDPW) and the Los Angeles County Sanitation District (LACSD) in 1985.  On-site operations included the blending of raw materials in mixing tanks prior to their distribution and sale.  Detergents were stored in three above-ground storage tanks (ASTs) located in the southeastern corner of the building, which were reportedly 400, 1,000, and 2,000-gallons in size.  According to the notices and self- monitoring reports, Pacifica Chemical was issued violations for excessive discharge of volatile organic compounds (VOCs) and heavy metals, including toluene, ethylbenzene, xylenes, and copper.  Other VOCs detected in self-monitoring reports included 1,1-dichloroethane (DCA), 1,1,1,- trichloroethane (TCA) (1800 ug/L), and tetrachloroethene (PCE).

According to correspondence within the LACSD's files, a 2,000-gallon above-ground storage tank containing PCE was present on-site in 1985, reportedly located near the southwest corner of the subject building.  Reportedly, Pacifica Chemical received the PCE in a bulk shipment that was pumped directly into the storage tank, prior to Pacifica Chemical subsequently repackaging into 55-gallon drums for resale purposes.

Pacifica Chemical was also registered with the Resource Conservation and Recovery Act-Small Quantity Generator (RCRA-SQG), Facility Index / Facility Registry System (FINDS) as a small quantity generator of hazardous wastes in 1996 and a large quantity generator of hazardous wastes in 1989, although the type and specific quantity of hazardous wastes is not listed.  The Property under Pacifica Chemical was issued a general violation in 1993, which was abated in 1998.

By 2000, Pacifica Chemical apparently ceased all manufacturing operations and no longer generated industrial wastewater at the Property.  The clarifier tank was closed in place on the subject property in 2005 and the concrete trenches were also filled in.

### 2.   TC RICH's Purchase of the Property.

At or around the time of the purchase of the Property by TC RICH in May 2005, in connection with financing of the Property and as a matter of due diligence and reasonable

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
May 17, 2017
Page 5

Direct: 310.988.4298
Fax: 424.239.1613
jcha@raineslaw.com

inquiry, a Phase I Environmental Assessment Report for the Property was prepared by a registered environmental assessor at A/E West Consultants, Inc. of Irvine, California.  In preparing the report, A/E West also reviewed an April 2003 Phase I report performed by JMK Environmental Solutions, Inc. of Granada Hills, California, that recommended no further action or investigation.  Based on its investigation and the historical operation of the clarifier on the property by Pacifica, A/E West recommended a limited further investigation solely comprised of the creation of a closure report for the clarifier with an accompanying analysis of soil samples to be submitted for certification.  A true and correct copy of the A/E West Phase I Environmental Assessment Report dated April 4, 2005 (excluding appendices) is attached hereto as <u>Attachment A</u>.

In accordance with the recommendation by A/E West, a member of TC RICH contracted Aqua Science Engineers, Inc. of Irvine, California, to perform the recommended subsurface analysis for closure of the clarifier.  Aqua Science determined that a closure certificate for the Property and clarifier had already been issued by the Los Angeles County Department of Public Works ("CLADPW") in 2004 based on representations made by Pacifica Chemical, without any apparent soil sampling.  Despite the certificate, Aqua Science informed CLADWP that it would perform soil sampling.  Aqua Science took soil samples at the Property under the supervision of CLADWP on April 7, 2005, taking samples from only under the clarifier and not elsewhere, as the CLADWP representative noted that the majority of piping from the building to the clarifier was above ground and that CLADWP would not require soil sampling along the piping.  Aqua Science made two borings on either side of the closed clarifier, found no evidence of volatile organic compounds and semi-volatile organic compounds, and concluded that the "use of the wastewater clarifier at the subject site has not impacted the subsurface with contamination."  A true and correct copy of Aqua Science's Project Report on Subsurface Environmental Investigation of Soil for Wastewater Clarifier Closure at the Property is attached hereto as <u>Attachment B</u>.

Having made a reasonable inquiry into the potential environmental issues and having received a finding of "no contamination" from the identified recognized environmental condition, TC RICH proceeded with and completed its purchase of the Property.

### 3. <u>Plaintiffs' Discovery of Discharge of VOCs by Pacifica Chemical Potentially Presenting an Imminent and Substantial Danger to Human Health or the Environment.</u>

In connection with the repayment of the purchase-money loan for the Property, which was a 10-year term loan, a new Phase I Environmental Site Assessment was performed by Andersen Environmental of Los Angeles, California, in early 2015.  After completing its own review of businesses and environmental data and records for the Property, Andersen concluded that the Pacifica Chemical operations constituted a Recognized Environmental Condition based

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
May 17, 2017
Page 6

Direct: 310.988.4298
Fax: 424.239.1613
jcha@raineslaw.com

on their prior handling and storage of PCE.  In this new Phase I report, Andersen recommended further soil testing, including testing of samples be performed near the clarifier and at locations along the concrete trenches used by Pacifica Chemical to look for contaminants that could have been discharged or released into the ground from Pacifica Chemical's operations on the Property.  A true and correct copy of the March 16, 2015 Phase I Environmental Site Assessment Report from Andersen Environmental (excluding appendices) is attached hereto as Attachment C.

In response to the recommendation from Andersen Environmental, Plaintiffs engaged EEC Environmental of Orange, California, to perform a Phase II report and investigation in order to assess recognized environmental conditions identified in the Phase I Environmental Site Assessment prepared by Andersen Environmental and to determine if these recognized environmental conditions have resulted in a release of chemicals to the environment. Specifically, EEC conducted a limited subsurface investigation and indoor air sampling event at the Property in two separate stages.  Following the testing, EEC prepared a report that detected PCE in soil, soil gas and groundwater at the Property in concentrations and locations consistent with discharge from Pacifica Chemical's operations at the Property.  A true and correct copy of the Phase II Report from EEC (excluding appendices) is attached as Attachment D.

Laboratory results from EEC's Phase II investigation indicated:

- Soil Sample concentrations of PCE ranging from 1.9 ug/kg to 71.5 ug/kg;

- Soil Vapor concentrations of PCE that were highest beneath the former PCE storage tank / clarifier areas and increasing with depth, with concentrations ranging from 0.71 ug/L up to 799 ug/L;

- Groundwater PCE contamination was detected in each of the five groundwater samples collected, with concentrations ranging from 1.4 ug/L to 530 ug/L, with the highest concentrations from borings located near the eastern edge of the warehouse in the vicinity of former floor drains; and

- Indoor Air PCE detected in the two locations tested within the building on the Property in concentrations of 12 to 18 $\mu g/m^3$, in excess of the California Human Health Screening Levels (CHHSLs) for indoor air concentrations for commercial/industrial sites.

TC RICH has granted access to and is cooperating with Pacifica Chemical's environmental contractor, Murex Environmental, Inc. ("Murex"), in allowing it to conduct prior and current activities on the Property to address the VOCs at the Property (as currently delineated in its *Design Data Collection and Pilot Test Workplan* (Workplan), dated August 19, 2016, and described in Murex's March 27, 2017 submittal in response to DTSC Comments regarding the December 7, 2016 *Data Gap Investigation Report*, a true and correct copy of which is attached

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
May 17, 2017
Page 7

Direct: 310.988.4298
Fax: 424.239.1613
jcha@raineslaw.com

hereto as <u>Attachment E</u>).  These activities have included investigation and characterization of volatile organic compounds (VOCs), including PCE and its daughter compounds, in soil, soil gas, and groundwater beneath the Property and to the east, assessment of potential risks to human health associated with VOC in soil vapor to the south and east of the Property, conducting a soil vapor/multi-phase extraction (SVE/MPE) pilot test to assess the viability of SVE/MPE technology at the Property, and implementation of such remedial test pilot project contributing to abatement of VOCs at the Property.

Current conditions attributable to Pacifica Chemical's discharges may present an imminent threat to human health or the environment.

### D.  PERSONS GIVING NOTICE

The full name and address of the persons giving notice is:

TC RICH, LLC
Rifle Freight, Inc.
Fleischer Customs Brokers
Richard G. Fleischer
Jacqueline Fleischer
132 W. 132nd Street,
Los Angeles, CA 90061

These parties should be contacted through their legal counsel:

Raines Feldman LLP
John S. Cha
Steven T. Gebelin
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 440-4100
jcha@raineslaw.com
sgebelin@raineslaw.com

### E.  CONCLUSION

As set forth above, following the 90-day notice period, Plaintiffs intend to bring a citizen suit against Pacifica Chemical under RCRA section 7002(a)(1)(B) by way of amendment to its pleadings in the pending action between the parties in the United States District Court.  We are willing to discuss effective remedies for the violations referenced in this Notice prior to filing the RCRA claim.  If you wish to engage in such discussions, we suggest that you do so promptly so that we can work towards resolution in a timely manner.  Although we prefer to avoid

Bret A. Stone
Kelli Johnson
PALADIN LAW GROUP LLP
May 17, 2017
Page 8

Direct: 310.988.4298
Fax: 424.239.1613
jcha@raineslaw.com

unnecessary litigation activity, we will not delay filing the RCRA claims if a satisfactory remedy has not been achieved by the time the applicable notice period expires.

Nothing herein shall be deemed as an admission of liability nor a waiver of any of our clients' rights and remedies, all of which are expressly reserved.

Sincerely,

John S. Cha
of RAINES FELDMAN LLP

cc (via registered mail only):

Mr. Scott Pruitt, Administrator
U.S. Environmental Protection Agency
Mail Code: 1101A
1200 Pennsylvania Ave., NW
Washington, D.C.  20460

Mr. Alexis Strauss, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Mr. Matt Rodriquez, Secretary
California Environmental Protection Agency
P.O. Box 2815
Sacramento, CA 95812-2815

Ms. Barbara A.  Lee, Director
California Department of Toxic Substances Control
P.O.  Box 806
Sacramento, CA 95812-0806